PEOPLE v FINLEY

Docket No. 85133. Submitted June 9, 1986, at Detroit. Decided June 16, 1987. Leave to appeal applied for.

Robert L. Finley was convicted of four counts of first-degree criminal sexual conduct and armed robbery, Wayne Circuit Court, Thomas J. Foley, J. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not correctly consider the appropriate factors in deciding to allow impeachment of defendant by evidence of a prior conviction in the event he testified. However, defense counsel did not establish defendant's desire to testify. Also, the prior crime, burglary, is dissimilar to the charged crime of armed robbery. Defendant's defense of alibi was presented by an alternate means than defendant's testifying. Last, defendant waived the issue by failing to testify.

2. The trial court did not err in refusing to allow defendant to approach the jury to allow them to see the color of his eyes. Closing argument is not the time to introduce new evidence.

3. The trial court did not err in allowing rebuttal testimony concerning a statement made by defendant which had not been disclosed to the defense prior to trial. The statement was oral and was not the subject of any discovery order.

4. The trial court did not err in allowing the admission of blood-typing evidence. Blood-typing evidence showing that the accused is included within a class of possible perpetrators has some incremental probative value and is admissible.

5. Defendant's last argument was that he was denied a fair trial because of the admission without objection of certain other testimony. Failure to object to the admission of testimony at trial precludes appellate review, absent manifest injustice.

Affirmed.

Rᴇғᴇʀᴇɴᴄᴇs

Am Jur 2d, Appeal and Error § 553.

Am Jur 2d, Evidence § 327.

Am Jur 2d, Rape §§ 61, 88 *et seq.*

Am Jur 2d, Trial § 214.

Am Jur 2d, Witnesses §§ 523 *et seq.*

Admissibility, weight, and sufficiency of blood-grouping tests in criminal cases. 2 ALR4th 500.

1. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVIC-
   TIONS.

   A trial court in a criminal trial has discretion to allow impeach-
   ment of the defendant by evidence of prior convictions in the
   event he testifies; in exercising this discretion, the trial court
   must consider three factors: (1) the nature of the prior convic-
   tion (whether it involved an offense bearing directly on credibil-
   ity, such as perjury); (2) whether the prior conviction is for
   substantially the same conduct for which the defendant is on
   trial (whether the offenses are so closely related that the jury
   would consider the defendant a "bad man" and convict him
   because of that rather than upon the evidence adduced as to
   the crime charged); (3) the effect on the decisional process if the
   accused does not testify out of fear of impeachment by a prior
   conviction (whether there are alternate means of presenting a
   defense).

2. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVIC-
   TIONS.

   Similarity between a prior conviction and a charged crime does
   not, per se, bar the use of evidence of the prior conviction for
   impeachment purposes; where similarity weighs against admis-
   sion, the prejudicial effect of that evidence must be balanced
   against two other factors: the extent to which conviction of the
   crime is probative of credibility and the effect of admission of
   the evidence on defendant's decision not to testify.

3. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS — APPEAL
   — PRESERVING QUESTION.

   A criminal defendant waives the issue of improper impeachment
   by failing to testify.

4. TRIAL — CLOSING ARGUMENT.

   The purpose of closing argument is to allow attorneys to com-
   ment on the evidence and to argue their theories of the law to
   the jury; closing argument is not the time to introduce new
   evidence.

5. CRIMINAL LAW.— EVIDENCE — BLOOD-TYPING EVIDENCE — RULES
   OF EVIDENCE.

   Blood-typing evidence showing that the accused is included
   within a class of possible perpetrators has some incremental
   probative value and is admissible (MRE 401).

6. RAPE — EVIDENCE — BLOOD-TYPING EVIDENCE.

   Admission of blood-type evidence for the purpose of showing that
   a criminal defendant had the same blood type as the person

committing a criminal sexual assault, even if error, is harmless error where the defendant's conviction rests upon the positive identification of defendant by the complainant.

7. EVIDENCE — APPEAL — PRESERVING QUESTION.
Failure to object to the admission of testimony at trial precludes appellate review, absent manifest injustice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Lora Weingarden,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for defendant on appeal.

Before: DANHOF, C.J., and CYNAR and J. M. BATZER,* JJ.

J. M. BATZER, J. Following a jury trial in Wayne Circuit Court, defendant was convicted of four counts of criminal sexual conduct in the first degree, MCL 750.520b(1); MSA 28.788(2)(1), and armed robbery, MCL 750.529; MSA 28.797. The jury found defendant not guilty of kidnapping, MCL 750.349; MSA 28.581. Sentenced to concurrent terms of forty to sixty years imprisonment on each conviction, defendant appeals each as of right.

The twenty-one-year-old victim testified as follows: She was vacuuming her automobile at approximately 6:20 P.M. on October 16, 1984, when she noticed two men staring at her. As she continued to vacuum, someone grabbed her by the back of her hair, pulled her out of the automobile, put a knife to her throat, and told her to get into her automobile. As she entered her automobile, the

* Circuit judge, sitting on the Court of Appeals by assignment.

victim could see her assailants' faces. She identified defendant as one of her assailants.

The victim and defendant entered the front seat of her automobile. The second man, who the victim identified as Thomas Vaughn, entered the back seat. Vaughn put a knife to the victim's neck and threatened to kill her. As defendant drove, he ordered the victim to perform fellatio on him. Vaughn placed the knife at the victim's stomach and she did as defendant ordered. Defendant then drove to a parking lot and stopped the automobile. The victim was ordered into the back seat and defendant and Vaughn traded places. The men dumped the victim's purse. Vaughn drove while defendant engaged in vaginal intercourse with the victim and performed cunnilingus on her. Following these sexual acts, Vaughn stopped the automobile, traded places with the defendant, and also engaged in vaginal intercourse with the victim as defendant drove.

Defendant told the victim that Vaughn was crazy and had killed someone. Throughout the incident, defendant kept asking Vaughn for his gun, which Vaughn said was in his pocket. The victim never saw the gun.

The victim was forced to engage in several more acts of vaginal intercourse with her assailants and one act of anal intercourse with defendant before she was dropped off on the freeway. She was picked up by another driver and taken to a nearby police station. The victim estimated that she arrived there at approximately 8:15 P.M. In addition to taking her automobile, defendant and Vaughn took three gold rings, two gold necklaces, and approximately $17 from the victim.

The first issue raised is whether the trial court erred in ruling that defendant's credibility could be impeached with evidence of a prior conviction.

MRE 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if
>
> (1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and
>
> (2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination.

The decision whether to admit evidence regarding prior convictions for purposes of impeachment is within the discretion of the trial court. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). In exercising this discretion, the trial court must consider three factors: (1) the nature of the prior conviction (whether it involved an offense bearing directly on credibility, such as perjury); (2) whether the prior conviction is for substantially the same conduct for which the defendant is on trial (whether the offenses are so closely related that the jury would consider the defendant a "bad man" and convict him because of that rather than upon the evidence adduced as to the crime charged); and (3) the effect on the decisional process if the accused does not testify out of fear of impeachment by a prior conviction (whether there are alternate means of presenting a defense). *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978).

Here, defendant's attorney moved prior to trial

to exclude evidence of defendant's prior conviction for burglary. The trial court ruled that the prior conviction would be admissible to impeach defendant's credibility because it was similar to the charge of armed robbery. Defendant did not testify.

We agree that the trial court did not correctly apply the *Crawford* factors. However, we do not find that this error warrants reversal.

The admission of evidence of a defendant's prior conviction for a crime similar or identical to the crime charged does not per se result in error requiring reversal. *People v Stokes*, 134 Mich App 146, 148; 350 NW2d 767 (1984). Where similarity weighs against admission, the prejudicial effect of that evidence must be balanced against two other factors: the extent to which the crime is probative of credibility and the effect of admission on defendant's decision not to testify. *People v Stokes*, *supra*. Burglary is an offense highly probative of credibility. *People v Ferrari*, 131 Mich App 621, 625; 345 NW2d 645 (1983); *People v Rush*, 118 Mich App 236, 240; 324 NW2d 586 (1982). The effect the ruling had on defendant's decision is also highly questionable. First, defense counsel failed to establish defendant's desire to testify. Second, the crime of burglary is dissimilar to the crime of armed robbery in that burglary does not imply violence or the presence of a weapon. Burglary also implies some kind of illegal entry of a building, conduct totally dissimilar from the criminal sexual conduct and kidnapping charges brought against defendant. Furthermore, defendant had alternate means in which to present his alibi defense. The circumstances of this case readily distinguish it from *People v Williams*, 413 Mich 72; 318 NW2d 462 (1982), where the Supreme

Court reversed the defendant's conviction because similar prior convictions were found admissible.

The effect the trial court's ruling had on the decisional process is also speculative as defendant did not testify. In *Luce v United States,* 469 US 38, 41-42; 105 S Ct 460; 83 L Ed 2d 443 (1984), the United States Supreme Court ruled that a defendant must testify in order to preserve the issue of improper impeachment by evidence of prior convictions.[1] The Court reasoned:

> A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.
>
> Any possible harm flowing from a district court's in limine ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. . . .
>
> When the defendant does not testify, the reviewing court also has no way of knowing whether the Government would have sought to impeach with the prior conviction. If, for example, the Government's case is strong, and the defendant is subject

---

[1] A number of state courts have adopted the *Luce* rule. See, *Page v State,* 725 P2d 1082 (Alas App, 1986); *State v Allie,* 147 Ariz 320; 710 P2d 430 (1985); *State v Garza,* 109 Idaho 40; 704 P2d 944 (Idaho App, 1985); *People v Redman,* 141 Ill App 3d 691; 95 Ill Dec 866; 490 NE2d 958 (1986); *State v Means,* 363 NW2d 565 (SD, 1985); *Vaupel v State,* 708 P2d 1248 (Wy, 1985). See also, *People v Collins,* 42 Cal 3d; 228 Cal Rptr 889; 722 P2d 173 (1986); *State v Harrell,* 199 Conn 255; 506 A2d 1041 (1986) (prospective application). But see, *State v McClure,* 298 Or 336; 692 P2d 579 (1984), *Commonwealth v Richardson,* 500 A2d 1200 (Pa Super, 1985). The issue is presently before our Supreme Court in *People v Pedrin,* 130 Mich App 86; 343 NW2d 243 (1983), lv gtd 422 Mich 972 (1985).

to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction.

Because an accused's decision whether to testify "seldom turns on the resolution of one factor," . . . a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify. . . .

Even if these difficulties could be surmounted, the reviewing court would still face the question of harmless error. . . . Requiring that a defendant testify in order to preserve Rule 609(a) claims, will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction. [Citations omitted.]

We find the Supreme Court's reasoning highly persuasive.[2] We hold that defendant waived the issue of improper impeachment by his failure to testify. The present record is simply inadequate for us to meaningfully review the effect of the trial court's decision. We do not know whether defendant would have testified or what he would have testified. Nor can we determine whether the prosecutor would have actually attempted to have evidence of the prior conviction admitted. We decline to engage in such speculation.

Defendant further argues that the trial court erred in refusing to allow him to approach the jury during his attorney's closing argument.

---

[2] MRE 609(a) is a slightly modified version of FRE 609(a). We do not find the modifications from the federal rule to be material here. While we recognize that Michigan courts are not bound in interpreting the Michigan Rules of Evidence by federal court decisions on federal rules, even decisions of the United States Supreme Court, Michigan appellate courts, including our Supreme Court, have found federal court decisions to be persuasive on issues involving analogous federal and state rules of evidence. See, e.g., *People v Whitfield,* 425 Mich 116; 388 NW2d 206 (1986); *People v Boyd,* 65 Mich App 11; 236 NW2d 744 (1975).

The victim had described defendant as having brown, saggy eyes prior to identifying his photograph. During closing argument, defense counsel requested that defendant be allowed to approach the jury for the purpose of demonstrating that his eyes were green. No evidence concerning defendant's actual eye color had been admitted during the trial. The trial court denied defense counsel's request.

The purpose of closing argument is to allow attorneys to comment on the evidence and to argue their theories of the law to the jury. Cf., *People v Jancar*, 140 Mich App 222, 233; 363 NW2d 455 (1985). Closing argument is not the time to introduce new evidence. Cf., *People v Longaria*, 333 Mich 696, 698-699; 53 NW2d 685 (1952). The trial court properly denied defense counsel's request.

The next issue raised is whether the trial court erred in allowing the prosecution to present rebuttal testimony concerning an alleged statement made by defendant which had not been revealed to the defense prior to trial.

Defendant's theory was that he could not have been involved in the crime since he was seen by a defense witness in another location at the same time the assault occurred. After defendant rested his case, the prosecution called Detective Clare Bennett. Bennett testified that defendant made the following statement following his arrest: "That was my birthday. I never left home on that day because they were having a birthday party for me." Bennett did not record the statement in his police report. Defendant's attorney objected to the admission of Bennett's testimony and requested a mistrial because the prosecutor had failed to advise him of the statement prior to trial. We find that Bennett's testimony was properly admitted.

The trial court did not err in denying defendant's motion for a mistrial.

First, the prosecutor did not violate the discovery order. This order merely required the disclosure of defendant's written or recorded statements. The statement in question was oral and was not recorded. See *People v Lytal*, 119 Mich App 562; 326 NW2d 559 (1982); *People v Browning (On Rehearing)*, 108 Mich App 281; 310 NW2d 365 (1981).

Further, the prosecutor's failure to disclose defendant's statement to defense counsel did not deny defendant due process. In support of his argument, defendant relies on *United States v Agurs*, 427 US 97; 96 S Ct 2392; 49 L Ed 2d 342 (1976). In *Agurs*, the Supreme Court ruled that due process requires the prosecutor to disclose any material evidence exculpating the defendant. Defendant's reliance on this ruling is misplaced. He is not asserting that evidence which would have created a reasonable doubt was withheld from the trier of fact. Defendant's complaint is that his attorney was unfairly surprised by evidence which contradicted defendant's alibi defense. The surprise could have been prevented by a more comprehensive discovery request or a pretrial interview with Bennett. Under these circumstances, we find no constitutional violation.

Third, the failure to disclose defendant's statement prior to trial did not violate the prosecutor's responsibility to list rebuttal witnesses. MCL 768.20; MSA 28.1043 does not require the prosecutor to specify the content of rebuttal testimony. And while the prosecutor did not specifically list Bennett as a rebuttal witness, defendant was informed that Bennett might testify as Bennett was an endorsed witness and the prosecutor's notice listed any or all endorsed witnesses as possible

rebuttal witnesses. The notice of rebuttal minimally complied with the statute. In any event, defendant waived any error by failing to object on this ground. *People v Khabar,* 126 Mich App 138, 141; 337 NW2d 9 (1983).

Defendant's next claim is that the trial court erred in admitting blood-typing evidence.

A prosecution witness testified that he tested blood samples from the victim, defendant and Vaughn. He determined that defendant and Vaughn had type o blood, and that the victim had type A blood. Forty-three percent of the white male population have type o blood. Further, defendant and Vaughn were secretors, that is, their blood type could be determined from an analysis of body fluids. Eighty percent of the population are secretors. The witness also testified that semen and vaginal fluid from the victim's jeans and vaginal area was found to contain type A and type H blood substances. While the substances could be attributed to the victim, the witness stated that a person with type o blood produces a high concentration of type H blood substances in other body fluids. Consequently, the type H substances could also be attributed to defendant and Vaughn as both were type o secretors. A blood sample was also tested from a knife and was found to be type o blood. (The victim testified that one of her assailants had cut himself on his knife.)

Defendant does not challenge the admission of the blood-typing evidence on the basis that it was obtained through a scientifically unreliable method. See, *People v Young (After Remand),* 425 Mich 470; 391 NW2d 270 (1986). Defendant objects on the grounds that the inconclusive results allegedly led to speculation and therefore prejudiced his case. This issue was not addressed in *Young, supra.*

In support of his argument, defendant relies on *People v Sturdivant,* 91 Mich App 128, 131, 134; 283 NW2d 669 (1979), lv den 407 Mich 933 (1979). In *Sturdivant,* this Court held that blood-typing evidence showing that the accused was included within a class of possible perpetrators without connecting him in any way to the charged offense had no probative value and its admission was error. We believe, in accord with a number of other panels of this Court considering the issue, that such evidence is relevant to show possible connections between a defendant and the criminal act. Obviously, such evidence without more cannot support a conviction. But, as it does have some incremental probative value, the jury may consider it along with the other evidence. See, e.g., *People v Proveaux,* 157 Mich App 357, 366; 403 NW2d 135 (1987); *People v Swinford,* 150 Mich App 507, 520-521; 389 NW2d 462 (1986), lv den 426 Mich 861 (1986); *People v Traylor,* 145 Mich App 148, 152; 377 NW2d 371 (1985); *People v Goree,* 132 Mich App 693, 700-704; 349 NW2d 220 (1984); *People v Thorin,* 126 Mich App 293, 301-303; 336 NW2d 913 (1983); *People v Camon,* 110 Mich App 474, 479-480; 313 NW2d 322 (1981), lv den 414 Mich 859 (1982); *People v Horton,* 99 Mich App 40, 49-51; 297 NW2d 857 (1980), vacated on other grounds 410 Mich 865 (1980). See also, MRE 401. Moreover, even if admission of this testimony was error, it was harmless beyond a reasonable doubt. The victim had ample opportunity to observe defendant during the crime and later was able to identify him through a photograph. The victim's identification evidence was sufficient to convict.

Defendant's final argument is that he was denied a fair trial because of testimony by a third party concerning the victim's language and conduct at the time she identified his photograph.

Prior to trial, the victim identified defendant's photograph as being a photograph of one of her assailants. A police officer present at the identification subsequently testified that the victim claimed to be sick when she picked out defendant's photograph. She then began to shake and ran down the hall crying. During closing argument, the prosecutor noted the importance of the officer's testimony describing the victim's reaction to defendant's photograph. Defense counsel did not object to the third-party testimony or to the prosecutor's closing argument. Defendant argues that the officer's testimony impermissibly bolstered the victim's identification.

Defendant's failure to object to the admission of this testimony precludes our review, absent manifest injustice. *People v McConnell,* 124 Mich App 672, 679; 335 NW2d 226 (1983). We find no such manifest injustice. The victim's testimony concerning her identification of defendant was strong. Moreover, defense counsel had an opportunity to cross-examine both the victim and the officer. Any prejudice resulting from the erroneous admission of the officer's testimony was harmless.

Defendant's convictions are affirmed.